REVISED OPINION
RAMIREZ, J.
Golden State Industries, Inc. appeals the denial of its motion to dismiss the complaint for lack of jurisdiction. We affirm the order denying dismissal.
I. FACTUAL BACKGROUND
Amparo Cueto sustained injuries when the pool deck she contracted for with Blue Haven Pools of Miami, Inc. collapsed on her foot. She sued Blue Haven and, after obtaining a default judgment, she also sued Golden State Industries, Inc. and Jeffrey D. Cohen. She alleged that Golden State conducted business in Florida under the trademark “Blue Haven Pools and Spas” and that Blue Haven Pools of Miami, Inc. “was a subsidiary of and/or part of this national pool building company.”
On August 15, 2000, Cueto served Golden State with process in California through Golden State’s “authorized agent,” Phil Za-mel. Golden State, however, did not answer the complaint nor did it file any other pleading. The trial court entered a default against Golden State on October 26, 2000. After Golden State received a notice for trial, it moved to set aside the default- on August 15, 2001, arguing excusable neglect, meritorious defense, and due diligence. The motion did not challenge the court’s jurisdiction.[1]
In support of its motion to set aside the default, Golden State relied upon the affidavit of Golden State’s corporate counsel, Daniel W. Schreimann, Esq., and a letter from Phil Zamel’s physician. In the affidavit, Schreimann swore that Zamel inadvertently failed to forward the complaint and summons to Golden State’s corporate counsel as a result of Zamel’s medical condition which impaired his mental faculties. Golden State also filed its proposed answer and affirmative defenses, -the latter of which included the defense of failure to state a cause of action, lack of personal jurisdiction, and absence of ownership of trademarks. The proposed answer did not set forth any facts to justify its allegation of lack of personal jurisdiction. Athough there existed two Golden State Industries, Inc. corporations, one incorporated in California and one incorporated in Nevada, neither the motion nor the proposed answer made any reference to that fact. They simply referred to “Golden State Industries, Inc.” The trial court denied the motion to vacate the default on October 10, 2001.
On February 6, 2002, Golden State renewed its motion to vacate default. In support of its renewed motion, Golden State again relied upon Schreimann’s affidavit, as well as the affidavit of Zamel’s physician, Colin Stokol, M.D. The new affidavit basically expanded on -the prior affidavit, wherein Dr. Stokol swore that Za-mel suffered from Parkinson’s Disease and *820 experienced memory difficulties, fatigability, deafness, and likely had a poor comprehension of questions and offered potentially' unreliable answers. The motion also alleged that “Golden State” maintained that they had no contacts whatsoever with the State of Florida. The Schreimann Affidavit referred to Golden State Industries, Inc., a California corporation, but did not intimate that there was another Golden State incorporated in the State of Nevada. The trial court denied the renewed motion to vacate default on April 22, 2002.
On February 12, 2002, six months after it had initially moved to set aside the default, Golden State for the first time moved to dismiss for lack of personal jurisdiction. Golden State again argued that it had no affiliation with Blue Haven and did not conduct business in Florida. In support of its motion to dismiss, Golden State relied upon the affidavit of California Golden State’s secretary and director, Billy Eisman, as well as the affidavit of Schreimann. Eisman swore that California Golden State only conducts business in California, does not own the Blue Haven Pools and Spas trademark nor have they ever owned such a trademark, is a sub-franchiser only for the State of California, and that California Golden State has never constructed or built a swimming pool in California or in any other state. Eisman also swore that Zamel suffered from a severe medical condition. None of these documents mention the Nevada Golden State Industries, Inc.
The existence of two Golden State Industries, Inc., both bearing the same name, with different states of incorporation, was revealed for the first time at the deposition of Phil Zamel, which was taken on March 22, 2002. Zamel testified that he bought the trade name Blue Haven Pools and Spas from its parent company in 1975 and that he was the president of “Golden State” since 1981. He also testified that there were two Golden State Industries, the one located in California and the other located in Nevada, that bore the same corporate name; that California Golden State is only registered to do business in California; and that he was not connected with the Nevada Golden State. It turns out that Zamel was not only connected with the Nevada Golden State, he was its president.
At the subsequent evidentiary hearing, the trial court considered the testimony of various witnesses, including the Schreim-ann Affidavit; the Eisman Affidavit; Cue-to’s deposition; the testimony of Cueto’s counsel John Seligman, Esq.; and the testimony of Ronald Zaberer, the Chief Financial Officer of both the California Golden State and Nevada Golden State. Zaberer admitted that Phil Zamel was the president of both corporations; that Nevada Golden State conducts business all over the United States; and that California Golden State conducts business only in California. Schreimann testified that he was counsel for both corporations. The trial court denied the motion to dismiss for lack of personal jurisdiction and this order forms the basis of Golden State’s appeal.
II. WAIVER OF PERSONAL JURISDICTION
The first issue we must consider is whether the defendant waived the issue of personal jurisdiction. Because personal jurisdiction is intended to protect a defendant’s liberty interests, the defense is a personal right and may be obviated by consent or otherwise waived. Babcock v. Whatmore, 707 So.2d 702, 704 (Fla.1998). As the Florida Supreme Court stated in Babcock, “a defendant may manifest consent to a court’s in personam jurisdiction in any number of ways, from failure sea *821 sonably to interpose a jurisdictional defense, to express acquiescence in the prosecution of a cause in a given forum, to submission implied from conduct.” Id. quoting from General Contracting & Trading Co. v. Interpole, Inc., 940 F.2d 20, 22 (1st Cir.1991)). Here, Golden State pursued its motion to set aside the default, but not the lack of jurisdiction, until months later when it had been repeatedly unsuccessful in obtaining the requested relief.
In Rojas v. Rojas, 723 So.2d 318 (Fla. 3d DCA 1998), the wife filed a dissolution of marriage action and obtained a default against the husband, a Mexican national. Counsel for the husband filed a “Notice of Limited/Special Appearance” announcing the husband’s intent to contest personal jurisdiction. The husband next filed a motion to set aside default and to dismiss the petition for dissolution of marriage. He argued that the trial court should defer to an earlier-filed proceeding in Mexico, and that the Florida action should be dismissed. We concluded that, because the husband’s motion to dismiss did not challenge personal jurisdiction, the defense was waived. Similarly, in Consolidated Aluminum Corp. v. Weinroth, 422 So.2d 330, 331 (Fla. 5th DCA 1982), the court stated that a “defendant wishing to contest personal jurisdiction must do so in the first step taken in the case, whether by motion or in a responsive pleading, or that issue is waived and' defendant has submitted himself to the court’s jurisdiction.”
We thus conclude that Golden State waived the issue of personal jurisdiction by not raising it initially, but instead pursuing its motion to set aside the default based on excusable neglect, due diligence and meritorious defense. The fact that the proposed answer made a vague, conclusory reference to the lack of personal jurisdiction, without setting forth any factual support, does not change the outcome that the issue was waived.
The dissent takes issue with this conclusion. Apparently, the dissent finds that the general denial of personal jurisdiction in the Second Affirmative Defense, included with ten other general, boiler-plate affirmative defenses, was sufficient to challenge personal jurisdiction because rule 1.140(h)(1) specifically allows the defense of lack of jurisdiction over the person to be presented in a responsive pleading. We cannot agree. Rule 1.140(h)(1) states:
(1) A party waives all defenses and objections that the party does not present either by motion under subdivisions (b), (e), or (f) of this rule or, if the party has made no motion, in a responsive pleading except as provided in subdivision (h)(2).
Because Golden State made a motion, we cannot see how the language of the rule supports the dissent.[2] Such an approach would allow a party to attack service of process first, obtain a ruling on that issue, then depending on the outcome, bring up the personal jurisdiction issue, followed perhaps by a motion attacking venue. The transgression which the dissent does not address is Golden State’s silence about the existence of two corporations. Golden State raised only one issue, which it unsuccessfully litigated, and then raised the issue of the two corporations with the same name from different states months after it *822 unsuccessfully litigated its motion to set aside default.
III. PERSONAL JURISDICTION
Even if the issue had not been waived, we find that the trial court properly denied the motion to dismiss. In determining whether there is personal jurisdiction, a two-part inquiry is required. First, the reviewing court must determine whether the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of Florida’s long-arm statute, section 48.193, Florida Statutes (1999). See Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla.1989). Under section 48.193, Florida Statutes (1999), a person subjects themselves to the jurisdiction of Florida courts, as follows:
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subdivision thereby submits himself or herself ... to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an officer of agency in this state.
(b) Committing a tortious act within this state.
Second, if the allegations in the complaint fall within the ambit of Florida’s long-arm statute, the court must then determine whether the exercise of jurisdiction is consistent with due process. Venetian Salami, 554 So.2d at 502. The exercise of personal jurisdiction comports with the requirements of due process so long as the defendant purposefully established “minimum contacts” in the forum state. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). We find the allegations in the complaint in this case are sufficient to invoke personal jurisdiction under Florida’s long-arm statute. See § 48.193(l)(a), 1(g), Fla. Stat. (1999). Additionally, these allegations show the constitutionally required minimum contacts with the State of Florida so as to satisfy due process requirements.
In addition to the allegations in the complaint regarding Golden State’s business activities in Florida through the “Blue Haven Pools and Spas” trademark and Blue Haven Pools of Miami, Inc.’s subsidiary status, the complaint makes various other allegations. The complaint alleges as follows:
Defendants and/or their agents and/or their employees ... negligently failed to adequately and reasonably inspect and build a pool deck; these defendants negligently failed to properly and reasonably supervise the actions of their agents and/or employees, failed to make sure that their agents and/or employees were properly trained in the installation of the subject decking and/or failed to properly and adequately provide sufficient information to [Cueto] so that she could know that the defendants’ agents and/or employees were not properly trained, did not know how to build a pool deck, and/or may not have been affiliated with this national organization.
Furthermore, the complaint alleges that Cueto injured herself as a direct, proximate, and reasonably foreseeable result of the defendants’ negligence.
IV. SERVICE OF PROCESS
We turn now to the issue of service of process. Section 48.081, Florida Statutes (1999), permits service of process upon a corporation to be served on the corporation’s authorized agent. That section provides as follows:
*823 (1) Process against any private corporation, domestic or foreign, may be served:
(a) On the president or vice president, or other head of the corporation.
A corporation’s president is its authorized agent for service of process. See § 607.0504(2), Fla. Stat. (1999). In the absence of the corporation’s president, vice president, or the corporation’s head, process may be served upon a variety of other persons. See § 48.081(l)b-d, (2) Fla. Stat. (1999). Process may be served on the corporation’s designated agent. See § 48.081(3), Fla. Stat. (1999).
In this case, it is undisputed that Phil Zamel was the president of both Nevada Golden State and California Golden State at the time in which Cueto effectuated service of process. Notwithstanding the different states of incorporation of Golden State, Phil Zamel was the authorized agent of both corporations under section 48.081, Florida Statutes (1999). Additionally, Phil Zamel was the designated agent of California Golden State under section 48.081(3), Florida Statutes (1999).
The denial of Golden State’s motion to vacate default is not before us for review. Golden State argues, however, that the parties agree that Nevada Golden State, as opposed to California Golden State, is the appropriate party defendant. It thus urges us to reverse based on this Court’s long standing policy that favors the resolution of matters on the merits, see Integrated Transaction Servs., Inc. v. Bahama Sun-n-Fun Travel, Inc., 766 So.2d 269, 271 (Fla. 4th DCA 2000). Notwithstanding this policy, to reverse for a trial on the merits, we would have to ignore our prior law on waiver, personal jurisdiction and service of process. We cannot in fairness do that. The plaintiff here was injured over seven (7) years ago. Golden State was served on August 15, 2000, almost four (4) years ago. It filed no pleadings for a year, then, for months tried to dance around the fact that there were two corporations with the same name, the same president, the same legal counsel, and the same chief financial officer. Enough is enough.
V. TWO GOLDEN STATE INDUSTRIES, INC.
The problem in this case all stems from the defendant incorporating in two different states under the exact same name, then using the same registered agent for both. We agree with the dissent that when the plaintiff served “Golden State Industries, Inc.,” it was not serving both the California and the Nevada corporations. Where we disagree is with the conclusion that the plaintiff was serving the California corporation. We conclude that the plaintiff served the Nevada corporation.
“When a default is entered, the defaulting party admits all well-pled factual allegations of the complaint.” Fiera, com, Inc. v. DigiCast New Media Group, Inc., 837 So.2d 451, 452 (Fla. 3d DCA 2002), quoting State Farm, Mut. Auto. Ins. Co. v. Horkheimer, 814 So.2d 1069, 1072 (Fla. 4th DCA 2001). Thus, the defendant admitted that it was doing business in Dade County, Florida under a trademark which they owned as “Blue Haven Pools and Spas.” They admitted that they had been in business since 1954, that they were experienced contractors, that they were the “world’s largest pool builder;” and that Blue Haven Pools of Miami, *824 Inc. was a subsidiary of and/or part of this national pool building company. As it turns out, these allegations apply only to the Nevada Golden State, not the California Golden State. When you consult http://wvnv.bluehaven.com, you see a presence in almost every state in the country. The trademark office lists Golden State Industries, Inc., with an address in San Diego, California, as the owner. Thus, when the defendant served “Golden State Industries, Inc.,” why should we assume, as the defendant suggests, that the plaintiff was serving the wrong Golden State, to which the allegations in the complaint did not apply, as opposed to the correct Golden State, to which the allegations did apply?
VI. CONCLUSION
We conclude, as the trial court did, that the defendant created the confusion between the two corporations. The obvious purpose for using the same corporate name in two states is to confuse creditors. The defendant continued the tactic during this litigation by keeping this information hidden from the plaintiff and the court for months while it unsuccessfully litigated the issue of the service of process, using perjured testimony. Only after the motion to vacate and its motion for reconsideration were both denied did the defendant raise the issue that there were two corporations with the same name in two different states.
We therefore affirm the order denying dismissal for lack of personal jurisdiction.
SHEVIN and RAMIREZ, JJ., concur.

. The dissent takes issue with this statement because, in its proposed Answer and Affirmative Defenses, as a Second Affirmative Defense, Golden State alleged that the court did “not have jurisdiction over Golden State, a non-resident of Florida, which does not conduct business and does not have sufficient contacts in Florida to subject it to the jurisdiction of this Court.” For the reasons we will explain later, this was insufficient to challenge the court’s jurisdiction.

. The dissent also cites M.T.B. Banking Corp. v. Bergamo Da Silva, 592 So.2d 1215 (Fla. 3d DCA 1992), but in that case the defendant raised the lack of personal jurisdiction in its answer and in its motion for judgment on the pleadings. Likewise, in Cumberland Software, Inc. v. Great American Mtg. Corp., 507 So.2d 794 (Fla. 4th DCA 1987), the defendant only filed an answer and a counterclaim, but did not file a motion.